IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HOCKESSIN HOLDINGS, INC, | § | CV. NO. 5:15-CV-1103-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| OCWEN LOAN SERVICING, L.L.C., | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant"). (Dkt. # 3.) Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing. After careful consideration of the Motion and supporting memorandum[1], the Court, for the reasons that follow, **GRANTS** Defendant's Motion.

BACKGROUND

This case is about the priority of two liens on real property located at 7622 Alverstone Way, San Antonio, Texas 78250 (the "Property"). ("Orig. Pet.," Dkt. # 1, Ex. A ¶ 4.) On March 31, 2009, Jennifer and Christopher Rodriguez ("Borrowers") obtained a loan in the amount of $124,623.00 to purchase the Property and secured the loan with a deed of trust in favor of the lender USAA Federal Savings Bank ("USAA"). (Orig. Pet. ¶ 8; "Deed of Trust," Dkt. # 3, Ex. A.) The deed of trust made Mortgage Electronic Registration Systems, Inc. ("MERS") the sole "nominee for [USAA] and [USAA's] successors and assigns." (Deed of

---

[1] Hockessin Holdings, Inc. failed to respond to Defendant's Motion to Dismiss or otherwise make an appearance in this case.

Trust).  On November 7, 2012, MERS assigned the deed of trust to GMAC Mortgage, LLC ("GMAC").  ("GMAC Assignment," Dkt. # 3, Ex. B.)  On June 18, 2013, GMAC assigned the deed of trust to Ocwen.  ("Ocwen Assignment," Dkt, # 3, Ex. C.)[2]

The Property was subject to certain covenants, conditions, and restrictions, pursuant to a Declaration entered into by Northwest Crossing Association of San Antonio, Inc., the Home Owner's Association ("HOA").  (Orig. Pet. ¶ 12; "HOA Decl.," Dkt. # 3, Ex. D.)  The HOA Declaration required that the home owner pay an "annual" and "special" assessment and that unpaid assessments would constitute a lien on the property.  (HOA Decl. art. IV.)  Pursuant to the HOA Declaration, any lien placed on the property for unpaid assessments would "be subordinate to the lien of any first mortgage."  (HOA Decl. art. IV § 9.)

On July 13, 2010, the HOA recorded a lien on the Property for unpaid assessments in the amount of $544.78.  (Orig. Pet ¶ 12; "HOA Lien 1," Dkt. # 3, Ex. E.)  On September 22, 2011, the HOA recorded a second lien on the Property for unpaid assessments in the amount of $1,461.09.  (Orig. Pet. ¶ 12; "HOA Lien 2," Dkt. # 3, Ex. F.)  Subsequently, the HOA foreclosed on the Property, and for $6,900.00 conveyed the Property by a deed to Kingman Holdings, LLC "subject to all exceptions of record and subject to each and every superior lien." (Orig. Pet. ¶ 13; "Kingman Deed," Dkt. # 3, Ex. G.)  On December 29, 2014, Kingman Holdings properly recorded their deed in Bexar County, Texas.  (Kingman Deed.)  On October 2, 2015, Kingman Holdings executed a special warranty deed transferring its rights in the Property to

---

[2] The Court takes judicial notice of the deed of trust and all assignments pursuant to Federal Rule of Evidence 201 as properly recorded and official property records of Bexar County, Texas.  The Court also notes that Plaintiff referenced these records and the records are central to Plaintiff's claims.  Accordingly, the Court may rely on these documents to adjudicate the pending motion. Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")

Hockessin Holdings, Inc. ("Plaintiff") for ten dollars.  (Orig. Pet. ¶ 14; "Hockessin Deed," Dkt. # 3, Ex. H.)

On October 8, 2015, Plaintiff filed suit in the 408th Judicial District Court of Bexar County, Texas.  (Orig. Pet.)  Plaintiff asserted claims to quiet title and for declaratory judgment challenging Defendant's interest in the property.  (Id. ¶¶ 18–22.)   On December 11, 2015, Defendant timely removed this action to federal court pursuant to 28 U.S.C. § 1446(b) and this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION

I. Quiet Title Claim

Plaintiff asserts a claim to quiet title.  A quiet title cause of action is an equitable remedy that exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right."  Vernon v. Perrien, 390

S.W.3d 47, 61 (Tex. App. 2012) (quoting Essex Crane Rental Corp. v. Carter, 371 S.W.3d 366, 388 (Tex. App. 2012)).  The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title.  Vernon, 390 S.W.3d at 61.  The elements of a suit to quiet title are (1) plaintiff has an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the defendant's claim, though facially valid, is invalid and unenforceable.  Montenegro v. Ocwen Loan Servicing, LLC, 419 S.W.3d 561, 572 (Tex. App. 2013) (citing Vernon, 390 S.W.3d at 61).   The plaintiff has the burden of proof to establish his superior equity and right to relief.

Plaintiff adequately alleges the first element of a quiet title action.  Plaintiff alleges it is the owner of the Property and has recorded its special warranty deed as the owner in Volume 17497, Page 2177 of the Bexar County deed records.  (Orig. Pet. ¶ 14; Hockessin Deed.)  This allegation is sufficient to make it plausible that Plaintiff has an interest in the specific property.  See Mortg. Elec. Registration Sys., Inc. v. Groves, No 14-10-00090-CV, 2011 WL 1364070, at * 4 (Tex. App. Apr. 12, 2011) (holding that an allegation of ownership by virtue of a recorded deed satisfies the requirement that a plaintiff prove an interest in specific property in a quiet title action).

Plaintiff sufficiently pleads facts to establish the second element of a quiet title claim that its title "is affected by a claim by defendant."  Montenegro, 419 S.W.3d at 572.  Plaintiff alleges that Defendant is the assignee and owner of a deed of trust for the Property that is recorded in Volume 16185, Page 1142 of the Bexar County deed records.  (Orig. Pet. ¶ 10; Ocwen Deed.)  Indeed, Defendant claims it has a superior interest in the Property, which naturally, affects Plaintiff's interest.  (Dkt. # 3 at 5–6.)

However, Plaintiff fails to sufficiently plead facts to make it plausible that "the

defendant's claim, though facially valid, is invalid and unenforceable." Montenegro, 419 S.W.3d at 572. Plaintiff alleges a single fact that Defendant's claim is invalid and unenforceable, namely that "Defendant has not collected any payments from Rodriguez or other part[ies] towards any financial obligation giving rise to the deeds of trust, and therefore, as a matter of law, have waived their interest and/or rights in the Property under the doctrine of waiver, estoppel, laches, and/or other law." (Orig. Pet. ¶ 16.)

      A.  Doctrine of Waiver

Under Texas law, the doctrine of waiver "is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 778 (Tex. 2008). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. Id.

Plaintiff has failed to plead any facts that make it plausible Defendant's claim of ownership in the Property is invalid or unenforceable under a theory of waiver. Plaintiff fails to plead facts that show "actual intent to relinquish the right [of its ownership in the Property], or intentional conduct inconsistent with the right [of ownership]," a necessary element to prove waiver of a right. Ulico, 262 S.W.3d at 778. Plaintiff pleads no facts that Defendant demonstrated an actual intent to relinquish its right of ownership in the Property nor does Plaintiff assert facts that Defendant acted in an intentional way inconsistent with ownership. To the extent that Defendant has not collected payment from the Borrowers, the Court notes that the Deed of Trust provides "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." (Deed of Trust ¶ 12.)

Therefore, Defendant's forbearance from collecting payments from the Borrower is conduct entirely *consistent* with ownership of the Property pursuant to the Deed of Trust. Accordingly, Plaintiff cannot rely on a waiver theory that Defendant's rights in the Property are invalid and unenforceable.

### B. Estoppel

Estoppel "generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit. Id. To state a claim under estoppel requires the following elements: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. Id. (citing Trammell Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 636 (Tex. 1997).

Plaintiff fails to allege any facts to state a *prima facie* case for estoppel that would render Defendant's rights to the Property invalid or unenforceable. Plaintiff fails to state any facts that Defendant made "a false representation or concealment of material facts," a required element to state an estoppel claim. Ulico, 262 S.W.3d at 778. To the contrary, Plaintiff pled in its Original Petition that it was fully aware of Defendant's ownership of the Property at the time it purchased the Special Warranty Deed by stating "GMAC assigned the deed of trust unto Ocwen by virtue of an assignment [properly recorded in the public records]" and that a search of the public records revealed that Ocwen had not released or assigned its interest. (Orig. Pet. ¶¶ 10–11.) Therefore, Plaintiff has failed to plead facts that Defendant's rights in the Property are invalid or unenforceable under a theory of estoppel.

C. Laches

Laches is an equitable remedy preventing a party from asserting a claim due to lapse of time. Brewer v. Nationsbank of Texas, N.A., 28 S.W.3d 801, 805 (Tex. App. 2000). To state a *prima facie* claim under laches, a party must show: (1) there was unreasonable delay by the other party in asserting legal or equitable rights; and (2) the party asserting laches made a good faith change in position to his detriment because of the delay. Id.

Plaintiff fails to plead any facts to state a *prima facie* case under laches that would make Defendant's rights in the Property invalid or unenforceable. Plaintiff does not plead any facts that Defendant unreasonably delayed its assertion of a legal or equitable right in the property or that the Plaintiff made a good faith, but detrimental change in its position due to the delay. Therefore, Plaintiff fails to state a claim under laches to show that Defendant's right in the Property are invalid or unenforceable.

To be sure that Defendant's claim in the Property is valid and enforceable, the Court notes that it is well-known a junior lienholder takes an interest in a property subordinate to the interests of the senior lienholder. Elbar Investments, Inc. v. Wilkinson, No. 14-99-002967, 2003 WL 22176624, at * 2 (Tex. App. Sept. 3, 2003); see also I-10 Colony, Inc. v. Chao Kuan Lee, 393 S.W.3d 467, 473 (Tex. App. 2012) (stating that under most circumstances, foreclosure on a junior lien will not extinguish a senior lien and the purchaser at the foreclosure sale will take subject to the senior lien).

Here, the public records reflect that Plaintiff acquired its interest from Kingman Holdings, who acquired its interest at the foreclosure of the HOA assessment liens. (See Kingman Deed; Hockessin Deed.) The HOA Declaration expressly states that the assessment liens placed on the Property "shall be subordinate to the lien of any first mortgage" (HOA Decl.

7

art. IV § 9) and the first mortgage on the Property was held by MERS.  (Deed of Trust.)  Further, the deed to the Property which Kingman received from the foreclosure sale states that the interest transferred was "subject to each and every superior lien."  (Kingman Deed § II.)  The fact that MERS assigned its interest to GMAC after the HOA recorded its subordinate liens does not change Plaintiff's subordinate interest nor did the foreclosure of the assessment liens extinguish the senior lien held by Defendant, who had acquired the superior interest before the foreclosure.  See Kingman Holdings, LLC v. Everbank, No. 5:13-CV-1127, 2014 WL 1491257, at * 4 (W.D. Tex. Apr. 14, 2014).  Therefore, since the Defendant's Deed of Trust was superior to the assessment liens acquired by Kingman Holdings at the foreclosure, Kingman Holdings took the Property subject to the superior lien.  Accordingly, when Kingman Holdings conveyed its interest to Plaintiff, Plaintiff took subject to Defendant's superior lien.  See e.g., DTND Sierra Investments LLC v. CitiMortgage, Inc., No SA-12-CV-80-XR, 2012 WL 1711738, at * 6 (W.D. Tex. May 15, 2012).

In conclusion, Plaintiff has failed to plead any facts that make it plausible to believe Defendant's rights in the Property are invalid or unenforceable.  Further, it is clear from the public records that Defendant's interest is valid and superior.  Therefore, Plaintiff has failed to state a claim to quiet title.

    II.        Declaratory Judgment Claim

In the Original Petition, pursuant to the Texas Declaratory Judgment Act codified as Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiff seeks that the Court make certain declarations related to the ownership of and priority and value of liens on the Property.  (Orig. Pet. ¶ 18–21; Tex. Civ. Prac. & Rem. Code Ann. § 37 et seq. (West 2015)).

The Fifth Circuit has held that the Texas Declaratory Judgment Act constitutes a

procedural rule and not a substantive rule of decision in federal court where jurisdiction is premised on 28 U.S.C. § 1332. Utica Lloyd's of Texas v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998); see also Everbank, 2014 WL 1491247 at 5. Unlike a state's substantive law, Texas procedural law does not govern decisions in federal court where jurisdiction is premised on diversity. Utica Lloyd's, 138 F.3d at 210 (citing Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.")). Therefore, Plaintiff fails to state a claim under Texas law by seeking relief under the Texas Declaratory Judgment Act.

Even assuming that Plaintiff brought its claims under the Federal Declaratory Judgment Act, which it did not, its claims would still fail. 28 U.S.C. §§ 2201–2202. The Federal Declaratory Judgment Act is "an enabling act, which confers discretion on the courts rather than an absolute right on the litigant." Sherwin-Williams Co. v. Holmes Cnty., 343 F.3d 383, 389 (5th Cir. 2003) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995)). As an enabling act, "the operation of the Declaratory Judgment Act is procedural only." Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc., 723 F.2d 1173, 1179 (5th Cir. 1984) (quoting Skelly Oil Co. v. Phillips Petrol. Co., 339 U.S. 667, 671 (1960)). The Supreme Court has explained, "the Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." Schilling v. Rogers, 363 U.S. 666, 677 (1960). Accordingly, to invoke relief under the Federal Declaratory Judgment Act a plaintiff must have an underlying and viable cause of action. See Reid v. Aransas Cnty., 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011) (holding that a plaintiff cannot use the Federal Declaratory Judgment Act upon failure to state the existence of a judicially remediable right). Here, since Plaintiff has failed to allege a cause of action under the only claim

it brought (quiet title), its request for declaratory under judgment must fail.  See e.g., Everbank, 2014 WL 1491257 at 5.

Finally, federal courts have broad discretion to grant or refuse declaratory judgment.  Torch, Inc. v. LeBlanc, 947 F.2d 193, 194 (5th Cir. 1991); Wilton, 515 U.S. at 286 ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."); see also 28 U.S.C. §2201 ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emphasis added)).  In this case, since Plaintiff fails to set forth sufficient facts demonstrating how Defendant's lien was extinguished by the assignment to Defendant and how Plaintiff has superior title, the Court declines to exercise its discretion in granting declaratory judgment.

III.   Right to Equitable Redemption

In the Original Petition, Plaintiff reserved the right to claim any equitable redemption if Defendant claimed a superior lien.  (Orig. Pet. ¶ 15.)

The doctrine of equitable redemption allows a lienholder "a reasonable time to cure default and require a reconveyance of the mortgaged property."  Elbar Investments, Inc. v. Wilkinson, No. 14-99-00297-CV, 2003 WL 22176624, at * 3 (Tex. App. Sept. 3, 2003) (citing Louisville Joint Stockland Bank v. Radford, 295 U.S. 555, 579 (1935)).  "To enforce an equity of redemption, a party must sue for that purpose and plead such equities that would authorize recovery."  Elbar, 2003 WL 22176624 at 3 (citing Parks v. Worthington, 87 S.W. 720, 721 (Tex. Civ. App. 1905).  To state a *prima facie* case for equitable redemption, a party must show (1) a

legal or equitable interest in the property subject to the mortgage; (2) prove that the party is ready, willing, and able to redeem the properties in controversy by paying off the amount of valid liens attached to the property; and (3) assert the claim before foreclosure sale because the equity of redemption terminates once foreclosure occurs. Scott v. Dorothy B. Schneider Estate Trust, 783 S.W.2d 26, 28 (Tex. App. 1990). To prove that a party is ready, willing, and able to redeem a property requires a party to show it made a tender of money in the redemption amount. Owens v. Bank of America, NA, No. H-11-2552, 2012 WL 912721, at * 3–4 (S.D. Tex. Mar. 16, 2012) ("[T]he tender requirement is a condition precedent to the plaintiffs' exercise of equitable rights or remedies."); Lambert v. First Nat. Bank of Bowie, 993 S.W.2d 883, 835–36 (Tex. App. 1999) (holding that failure to tender all amounts due precluded a plaintiff from seeking recission of a sale of property because "to get equity, [a party] had to do equity").

Here, Plaintiff fails to state a claim upon which this Court can grant relief for two reasons. First, Plaintiff does not explicitly plead a right of equitable redemption. The face of the Original Petition only alleges causes of action to quiet title and for declaratory judgment. (Orig. Pet. ¶¶ 18–22.) Here, Plaintiff simply alleges conduct in an attempt to *preserve* the right of equitable redemption (id. ¶ 15); Plaintiff never affirmatively sues for a right of equitable redemption. Elbar, 2003 WL 22176624 at 3 ("To enforce an equity of redemption, a party must sue for that purpose and plead such equities that would authorize recovery.") Second, Plaintiff pleads no facts that it actually tendered money to Defendant. Instead, Plaintiff only states it "attempted to contact Defendant to ascertain what interest, if any, it asserted in the Property or related liens." (Orig. Pet. ¶ 15.) Since Plaintiff has not stated it actually tendered money to Defendant, Plaintiff has failed to show that it is ready, willing, and able to redeem the properties in controversy by paying off the amount of valid liens attached to the property.

Case 5:15-cv-01103-DAE   Document 6   Filed 01/19/16   Page 12 of 12

12

Accordingly, to the extent Plaintiff alleges a right of equitable redemption, the Plaintiff fails to state a claim upon which this Court can grant relief.

## CONCLUSION

Thus, for the reasons explained above, this Court **GRANTS** Defendant's Motion (Dkt. # 3) and **ORDERS** this case **DISMISSED WITHOUT PREJUDICE**.

**IT IS ORDERED**

**DATED:** San Antonio, Texas, January 19, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE